# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

HARCO INDUSTRIES, INC.,

:

    Plaintiff,

Case No. 3:04-cv-048

:

  -vs-

Chief Magistrate Judge Michael R. Merz

ELCO TEXTRON, INC., et al.,

:

    Defendants.

## DECISION AND ORDER

This case is before the Court on three Motions:

1.   Motion of Defendant Elco Textron, Inc., for Partial Summary Judgment on Cross-claim of Delphi Corporation and Delphi Automotive Systems Corporation (Doc. No. 15);

2.   Motion of Defendant Elco Textron, Inc., for Partial Summary Judgment on Claim of Plaintiff Harco Industries, Inc., for Unjust Enrichment (Doc. No. 16); and

3.   Motion for Partial Summary Judgment of Defendant and Cross-Plaintiff Delphi (Doc. No. 25) directed to Plaintiff's claims against the two Delphi corporations.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of

1

law." Fed.R.Civ.P. 56. On a motion for summary judgment, the movant has the burden of showing that there exists no genuine issue of material fact, and the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157-59 (1970). Nevertheless, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original). Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment asserting that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law. Fed. R. Civ. P. 50). *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989). If, after sufficient time for discovery, the opposing party is unable to demonstrate that he or she can do so under the *Liberty Lobby* criteria, summary judgment is appropriate. *Id*. The opposing party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby,* 477 U.S. at 249-50, 106 S. Ct. at 2510-11 (citations omitted). "The mere possibility of a factual dispute is not enough." *Mitchell v. Toledo Hosp.*, 964 F. 2d 577, 582 (6th Cir. 1992)(quoting *Gregg v. Allen-Bradley Co.,* 801 F. 2d 859, 863 (6th Cir. 1986). Therefore a court must make a preliminary assessment of the evidence, in order to decide whether the plaintiff's

2

evidence concerns a material issue and is more than de minimis. *Hartsel v. Keys*, 87 F. 3d 795 (6th Cir. 1996). "On summary judgment," moreover, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S. Ct. 993, 994, 8 L. Ed. 2d 176 (1962). Thus, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby,* 477 U.S. at 249, 106 S. Ct. at 2510.

The moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex,* 477 U.S. at 323; *see also, Boretti v. Wiscomb,* 930 F.2d 1150, 1156 (6th Cir. 1991) (citation omitted). If the moving party meets this burden, the nonmoving party must go beyond the pleadings to show that there is a genuine issue for trial. *Matsushita*, 475 U.S. at 587; *Martin v. Ohio Turnpike Comm'n.*, 968 F. 2d 606, (6th Cir. 1992), *cert. denied*, 506 U.S. 1054, 113 S. Ct. 979, 122 L.Ed.2d 133 (1993).

In ruling on a motion for summary judgment (in other words, determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *Interroyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied,* 494 U.S. 1091 (1990). Thus, in determining whether a genuine issue of material fact exists on a particular issue, a court is entitled to rely only upon those portions of the verified pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

## Procedural History

On September 6, 2001, Harco Industries, Inc. ("Harco"), sued ELCO Textron, Inc. ("Textron") in the Montgomery County Common Pleas Court for breach of contract and unjust enrichment (Complaint in Case No. 01CV4861, Exhibit 1 to Affidavit of Jill Meyer Vollman, Doc. No. 17). The claims were pled to arise out of certain Level two containment work which Harco performed on certain bolts which Textron manufactured for use in Delphi brake systems; both claims arose out of the same work and were alternative theories of recovery for the same amount of money. Neither Delphi entity was initially named as a party to that litigation.

On November 22, 2002, Common Pleas Judge A. J. Wagner granted Textron's summary judgment motion and dismissed with prejudice both claims for relief (Decision, Order, and Entry Sustaining Defendant's Motion for Summary Judgment; Vollman Affidavit, Ex. 5). Harco appealed and on May 9, 2003, the Montgomery County Court of Appeals affirmed the judgment as to the breach of contract claim but reversed as to the unjust enrichment claim. Judge Wolff wrote for the court that

> there was a genuine issue of material fact as to whether Textron knew of the work that Harco was performing and acquiesced in it. Also, it appears that Textron's initial response to its Level II Controlled Shipping Notification did not demonstrated full compliance with what Delphi required under those circumstances. The reply indicated that Textron had contracted with QIS to inspect for two of the three problems that were being encountered with the bolts but that it would continue to inspect for the third problem in house. Delphi's Supplier Guidelines required outside inspection for all three problems, and Ron Brewer[1] stated that he informed Textron of this fact after receiving its reply. As such, there was a genuine issue of material fact as to whether Textron benefitted from Harco's inspections. In other words, the inspections proposed by Textron were, according to

---

[1] Brewer is unidentified, but from the context this Court infers that he was acting on behalf of Delphi.

4

> Brewer, inadequate for Delphi without the Harco inspections. Moreover, even if it is true, as Textron claims, that it had informed Delphi that the work by Harco had not been authorized, such communication does not necessarily equate with a denial that Harco was conferring a benefit upon Textron. The evidence, construed most favorably to Harco, presented genuine issues of material fact as to whether Harco was conferring a benefit upon Textron by performing a quality check of the banjo bolts that Textron itself was not properly performing and that Textron knew of this benefit. If these issues are resolved in Harco's favor, it would seem to follow that Textron is unjustly enriched if it refuses to compensate Harco. Summary judgment on the claim of unjust enrichment was improper.

(Opinion at 6, Vollman Affidavit, Exhibit 6). The case was remanded for further proceedings on Harco's unjust enrichment claim. *Id*.

After remand, Harco obtained leave to file an amended complaint which made claims both against Textron and Delphi Energy and Chassis Systems. In the First Cause of Action it pled a breach of contract against Delphi and in the Second Cause of Action unjust enrichment against Textron and Delphi, both for the same amount of money which had been previously sought. (First Amended Complaint, Vollman Affidavit, Exhibit 7).

**Claims Made in this Case**

Ms. Vollman avers and no one else has denied that on February 11, 2004, Harco voluntarily dismissed the Common Pleas case (Vollman Affidavit, ¶ 3). Harco then filed this case two days later. Subject matter jurisdiction is based on diversity of citizenship and the fact that more than $75,000 is in issue (Complaint, Doc. No. 1, at ¶¶ 1-5.) The two Delphi entities named here – Delphi Corporation and Delphi Automotive Systems Corporation – have different names than the Delphi entity named in the Common Pleas case – Delphi Energy and Chassis Systems – and are collectively referred to in the Complaint as "Delphi." The Complaint asserts three causes of action:

5

breach of contract, unjust enrichment, and promissory estoppel; Textron is a Defendant only on the second cause.

In response to the Complaint, the Delphi entities pled that Delphi Corporation was the successor to Delphi Automotive Systems. They then pled a Cross-Claim in five counts against Textron. They asserted that Textron as a supplier of banjo bolts to Delphi, some of which had been found to be in "non-conformance with specifications and quality requirements," had been placed on class 2 containment "which required Textron to had a third party provide inspection and other containment services to insure that the products being provided by Textron to Delphi met specifications and quality requirements." (Delphi's Cross-Claim, Doc. No.8, at ¶¶ 1-3). Delphi asserted "[t]he third party providing the class 2 containment services for the subject banjo bolts was" Harco. *Id*. at ¶4. In Count I Delphi alleged Textron was obliged by its supply contract with Delphi to indemnify Delphi if Delphi was required to pay Harco. In Count II Delphi pled the same claim in implied contract. In Count III Delphi alleged Textron had been unjustly enriched by receiving the Harco services which had been conferred on it "through the efforts of Delphi." *Id*. at ¶ 26. Count IV and Count V restate the same claim as one for promissory estoppel or contribution. Delphi concludes by demanding a judgment of indemnity for any amount it is required to pay Harco or for contribution to that amount to the extent Textron is responsible for it. *Id*. at p. 7.

Textron responded with an Answer and Counterclaim (Doc. No. 11). In two counts it claims it had the right under its contract with Delphi to select a containment services provider from a Delphi-approved list, that it did so by selecting QIS which performed the services and was paid for them, and that Delphi knew of the QIS services and nonetheless arranged for Harco to perform "sorts on [Textron's] banjo bolts. *Id*. at ¶¶ 48-60. This conduct is alleged to make Delphi liable for any amount Textron must pay Harco, as a matter of indemnity, contribution, and damages for breach of contract.

## Textron's Motion Against Harco

As noted above, Harco's only claim against Textron is for unjust enrichment. Textron seeks partial summary judgment on that claim "pursuant to the doctrines of *res judicata*, collateral estoppel, and law of the case to the extent that it exceeds the parameters already imposed in state court."

Textron's claim is that there were three separate sorts done as part of the Level Two containment. It contracted with QIS to do two of them and informed Delphi it would do the third itself. Delphi indicated this did not meet the supply contract because the third sort was not being done by a third party. Allegedly unbeknownst to Textron, Delphi arranged for Harco to do all three sorts. Textron's theory is that Harco's unjust enrichment claim for the two sorts done by QIS is barred by *res judicata*, collateral estoppel, and the law of the case.

Federal courts in subsequent litigation are obliged to give prior state court judgments the same effect those judgments would be given in the courts of the rendering State. 28 U.S.C. §1738, *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 105 S. Ct. 1327, 84 L. Ed. 2d 274 (1985); *Migra v. Warren City School District Board of Edn.,* 465 U.S. 75, 104 S. Ct. 892, 79 L. Ed. 2d 56 (1984); *Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 102 S. Ct. 1883, 72 L. Ed. 2d 262 (1982); *Gutierrez v. Lynch*, 826 F. 2d 1534 (6th Cir. 1987); *McNasby v. Crown Cork and Seal Co., Inc.,* 888 F. 2d 270 (3d Cir. 1989). Thus this Court must turn to Ohio law to determine what effect the Ohio courts would give to the prior judgments of the Montgomery County Common Pleas Court and the Montgomery County Court of Appeals.

Under Ohio law:

> A valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action.

*Grava v. Parkman Twp.*, 73 Ohio St. 3d 379, 653 N.E. 2d 226 (1995), syllabus. (Paragraph two of the syllabus of *Norwood v. MacDonald,* 142 Ohio St. 299, 52 N.E.2d 67 (1943), overruled; paragraph two of the syllabus of *Whitehead v. Gen. Tel. Co.*, 20 Ohio St. 2d 108, 254 N.E. 2d 10 (1969), overruled to the extent inconsistent herewith; paragraph one of the syllabus of *Norwood, supra*, and paragraph one of the syllabus of *Whitehead, supra,* modified; 1 Restatement of the Law 2d, Judgments (1982), §§24-25, approved and adopted.)  *See also National Amusements, Inc. v. Springdale*, 53 Ohio St. 3d 60, 558 N.E.2d 1178, 1180 (1990).

For either *res judicata* or collateral estoppel to apply, therefore, there must be a final judgment on the merits of a claim.  When a judgment which was final is vacated and the case remanded to the trial court, the judgment no longer has *res judicata* effect. *Dodrill v. Ludt,* 764 F. 2d 442 (6th Cir. 1985); *Metropolis Night Club v. Ertel,* 104 Ohio App. 3d 417, 419 (Ohio App. 8th Dist. 1995).  In this case, the Court of Appeals vacated the judgment of the Common Pleas Court on the unjust enrichment claim and remanded the case for further proceedings.  There is thus no final judgment on the merits of Harco's unjust enrichment claim against Textron and neither *res judicata* nor collateral estoppel bars that claim in this Court.

Textron also seeks summary judgment on the basis of the law of the case doctrine. "As most commonly defined, the doctrine [of law of the case] posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618, 103 S. Ct. 1382, 75 L. Ed. 2d 318, 333 (1983), citing 1B Moore's Federal Practice ¶0.404 (1982).  "Law of the case directs a court's discretion, it does not limit the tribunal's power." *Id.*, citing *Southern R. Co. v. Clift*, 260 U.S. 316, 319, 43 S. Ct. 126, 67

8

L. Ed. 283 (1922); *Messenger v. Anderson*, 225 U.S. 436, 32 S. Ct. 739, 56 L. Ed. 1152 (1912); *see also Gillig v. Advanced Cardiovascular Sys., Inc.*, 67 F. 3d 586, 589-90 (6th Cir. 1995). "While the 'law of the case' doctrine is not an inexorable command, a decision of a legal issue establishes the 'law of the case' and must be followed in all subsequent proceedings in the same case in the trial court or on a later appeal in the appellate court, unless the evidence on a subsequent trial was substantially different, controlling authority has since made a contrary decision of the law applicable to such issues, or the decision was clearly erroneous and would work a manifest injustice." *White v. Murtha*, 377 F. 2d 428 (5th Cir. 1967), quoted approvingly in *Association of Frigidaire Model Makers v. General Motors Corp.*, 51 F.3d 271, (6th Cir. 1995). Because this case is in federal court on the basis of the diverse citizenship of the parties, the Court is bound to follow the law of the case as established by the Montgomery County Court of Appeals. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 2d 1188 (1938); *Wichita Royalty Co. v. City Nat'l Bank,* 306 U.S. 103 (1939); 1B Moore's Federal Practice ¶0.404 (1982).

The law of the case doctrine applies to principles or rules of law, not findings of fact. The conclusions of law reached by the Montgomery County Court of Appeals, as applicable to the case on remand, are

1. The elements of unjust enrichment include 1) a benefit conferred by a plaintiff upon a defendant; 2) knowledge by the defendant of the benefit; and 3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment. (Opinion, Exhibit 6 to Vollman Affidavit, at 5).

2. Upon the evidence presented on the summary judgment motion in the Common Pleas Court, Textron is not entitled as a matter of law to judgment in its favor. *Id*. at 5-6.

The Court of Appeals did not analyze Harco's case as bringing three different claims of unjust enrichment on three different sorts it completed and then find Textron was entitled to judgment as

9

a matter of law on two of those three. Instead, it vacated the summary judgment on the unjust enrichment claim in its entirety. Thus this Court is indeed bound by the law of the case doctrine, but its impact is that we must apply the elements of unjust enrichment as they were applied by the Montgomery County Court of Appeals and on those elements, Textron is not entitled to summary judgment on any part of the unjust enrichment claim.

Textron's Motion for Partial Summary Judgment against Harco is denied.

### Textron's Motion Against Delphi

*A fortiori*, if there is no final judgment on which to rest a *res judicata* or collateral estoppel claim by Textron against Harco, there can be no such defense as against Delphi, whether or not it is in privity with Harco. Therefore Textron's Motion for Partial Summary Judgment against the Delphi Defendants on their Cross-Claim is denied.

The law of the case doctrine applies here regardless of the fact that the Delphi entities were not parties at the time of appeal, but it does not result in granting summary judgment to Textron on the cross-claim. That Motion is also denied.

### Delphi's Motion Against Harco

Delphi seeks summary judgment dismissing all three claims Plaintiff Textron makes it: breach of contract, unjust enrichment, and promissory estoppel. Delphi relies on the deposition testimony of Harco's General Manager, Merle Brumfield, given in the state case before Delphi was made a party. Mr. Brumfield was being deposed by counsel for Textron and stated

> I think Delphi has no financial obligation. They simply determine if your

10

> parts are to print or not, in other words, compliance. And you [Textron] signed a contract with them to send them parts to print. So it's up to the person who's making the parts to bear the obligation. . . . I knew Delphi wasn't going to pay me [Harco]. I knew that going in. If she [Noreen Campbell, a Delphi employee] could put pressure on Textron though the organization – see, if it wasn't – if it was planned I would have got a PO [from Delphi] before I started. I'm not that stupid. I was just trying to help, you know.

Brumfield Deposition, attached as Exhibit A to Doc. No. 25, at 126-27.

Without doubt, Mr. Brumfield's testimony is non-hearsay, admissible against Harco because he was at the time its general manager testifying in that capacity. Fed. R. Evid. 801(d)(2)(D). The question is whether Mr. Brumfield's testimony is conclusive. In the case relied on by Harco, *Koserkoff v. Chesapeake & Ohio Ry. Co.*, 427 F. 2d 1049, 1054 (6th Cir. 1970), the argument was that testimony by others contradicted the plaintiff's admission and were sufficient to sustain a verdict. The Court of Appeals, without resolving the general question of when a plaintiff's admission is fatal to his claim, found in that case that the other testimony was not sufficiently contradictory as to prevent a directed verdict.

What contrary evidence does Harco present? It relies first on Noreen Campbell's statement to Mr. Brumfield that she would get Harco paid. In the first place, that statement is hearsay – it is taken from Brumfield's deposition, not Campbell's. In the second place, it is not contradictory to Brumfield's testimony but completely consistent with it. Brumfield testified he didn't expect to be paid directly by Delphi and his testimony about what Campbell said, even if admissible, would be to the effect that Campbell would bring pressure to bear on Textron to get Harco paid.

The case authority relied on by Delphi establishes that a contract, either express or implied, was not created between Delphi and Harco. *Columbus, Hocking Valley & Toledo Ry. Co. v. Gaffney,* 65 Ohio St. 104, 61 N. E. 152 (1901); *Bick v. Perelman,* 87 Ohio L. Abs. 33, 175 N.E. 2d 536 (Ohio App. 8th Dist. 1961). Brumfield, the person who caused Harco to perform the

11

containment services, simply did not expect to receive payment from Delphi. There is no contrary evidence that anyone else acting on behalf of Harco thought that they were creating a contractual relationship with Delphi by performing the containment services.

The same is true of Harco's promissory estoppel claim. Brumfield's testimony expressly disclaims any reliance on an expectation that Harco would be paid by Delphi.

However, Brumfield's testimony is not conclusive on the unjust enrichment claim. As noted before, the law of the case is that the elements of unjust enrichment include 1) a benefit conferred by a plaintiff upon a defendant; 2) knowledge by the defendant of the benefit; and 3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment. Delphi asserts this claim is barred because "Delphi has not retained any benefit from Harco, since the evidence shows that Delphi paid Textron pursuant to the terms of its contract with Textron." Reply Memorandum, Doc. No. 38, at 4. No record reference is given for any such evidence. If Delphi received complying parts as a result, at least in part, of Harco's efforts, it may well have received and be retaining the benefit of Harco's containment activities. It is plain from Brumfield's testimony that Harco did not perform the containment activities gratuitously, that it did expect to get paid.

Therefore, Delphi's Motion for Partial Summary Judgment is well taken as to the breach of contract and promissory estoppel claims, but not as to the unjust enrichment claim.

**Conclusion**

Textron's Motions for Partial Summary Judgment (Doc. Nos. 15 and 16) are denied. Delphi's Motion for Partial Summary Judgment (Doc. No. 25) is granted in part and denied in part as set forth above.

This case remains set for trial to the Court, sitting without a jury[2], on January 30, 2006. The parties shall file their proposed findings of fact and conclusions of law not later than the time of the final pretrial conference.

August 26, 2005.

s/ **Michael R. Merz**  
Chief United States Magistrate Judge

---

[2] While Plaintiff initially made a jury demand, all parties waived trial by jury during the scheduling conference on July 19, 2005. This waiver is confirmed in the Court's Scheduling Order (Doc. No. 52).